UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL IMEL, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:19-cv-0634-TWP-MPB |
| DC CONSTRUCTION SERVICES, INC., and DUSTIN CALHOUN, | ) ) ) ) |
| Defendants. | ) ) |

**ENTRY ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

This matter is before the Court on Plaintiff, Michael Imel's ("Imel") Motion for Conditional Certification and Notice of Collective Action Lawsuit ([Filing No. 29](#)).  Imel asks the Court to grant conditional certification of a proposed Collective Action and to direct the Defendants, DC Construction Services, Inc., ("DC Construction"), and Dustin Calhoun, ("Calhoun") (collectively, "Defendants"), to produce certain information and to set this matter for a status conference.   For the reasons that follow, the Motion is **granted**.

## I.   BACKGROUND

Defendant, DC Construction, an Indiana corporation with its principal place of business in Hamilton County, Indiana, is a commercial paving and asphalt company. ([Filing No. 31-1](#), ¶ 4.) DC Construction employs anywhere from 20 to 60 people at any given time.   *Id*. at 5.   Calhoun, a resident of Hamilton County, is the president, sole owner and operator of DC Construction. Some of DC Construction's employees are hourly employees who clock in and out via a timeclock at the main office or through a cell phone application, while other employees are paid on salary. *Id*. ¶ 6.

Plaintiff, Imel, is a resident of Anderson, Indiana.   He worked as an asphalt supervisor at

DC Construction for multiple periods from 2015 to 2019. (Filing No. 29-1 at 1 ¶4.) DC Construction paid Imel and some of his co-workers hourly and on a weekly basis. *Id*. ¶¶ 5-6. Imel and his hourly co-workers routinely worked more than 40 hours in a week for DC Construction. *Id*. ¶ 7. Imel and his fellow hourly co-workers would use the shop timeclock to clock in or out if they were working locally using a program called Builder-Trend to keep track of their start and end times. *Id*. ¶¶ 8-9. If DC Construction did not like where Imel or his fellow hourly co-workers were located when they clocked in or out on Builder-Trend, it would change the clock in or clock out time of the employee. *Id*. ¶ 10. DC Construction would punish Imel and his fellow hourly co-workers for clocking in or clocking out from the wrong location by deducting time from the employees' work hours. *Id*. ¶¶ 11-12. If Imel or his fellow hourly co-workers were to take time for a lunch break then DC Construction required them to write it on their timecards or note it on Builder-Trend. DC Construction would deduct one hour for lunch each day that Imel or other co-workers worked at least eight (8) hours, regardless of whether or not Imel and his fellow hourly co-workers actually took a lunch break, a partial lunch break, or no lunch break. *Id*. ¶¶ 13. In addition, DC Construction would deduct time from drivers, such as Imel, for stopping at a gas station or other location at any time while on the clock. *Id*. ¶ 14. For instance, if Imel stopped to let himself and/or his passengers use the restroom at a gas station on the way to a worksite, time would be deducted from Imel's time worked. *Id*. ¶ 15.

On February 12, 2019, Imel initiated this cause of action on behalf of himself and other employees of DC Construction alleging that DC Construction and Calhoun violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, by willfully failing to pay its hourly employees for all overtime hours worked over 40 hours in a work week and illegally deducting time from its

hourly employees' time worked for purposes of punishment and for lunch breaks.   (*See* Filing No. 1; Filing No. 30.)   Imel seeks conditional certification of the following collective action:

> All present and former hourly employees of DC Construction Services, Inc. who were employed on or after February 1, 2016 who had / have time deducted from their time worked as a punishment or for a lunch break without the employee noting that a lunch break was taken.

Defendants provide the declaration of Calhoun, and his description of the work and role of the parties, aligns with the description provided by Imel in his declaration.   (*See* Filing No. 31-1.) However, Calhoun denies that he has violated any FSLA rules and contends that Imel is using this lawsuit as a means to coerce DC Construction and Calhoun to re-hire him.   Calhoun affirms that he reviewed the daily sheets filled out by Imel and determined that Imel was paid all amounts owed.   (Filing No. 31-1 at 2.)

## II.   <u>LEGAL STANDARD</u>

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).   The "District Court has the discretion to authorize notice to similarly situated employees so that they may opt-in to a class."   *Carter v. Indianapolis Power & Light Co.*, 2003 U.S. Dist. LEXIS 23398, at *7 (S.D. Ind. Dec. 23, 2003).   "Such a collective action differs significantly from a Rule 23 class action.   Potential class members in a collective action must affirmatively *opt-in* to be bound, while in a Rule 23 action they must *opt out* [to] not be bound." *Cheesman v. Nexstar Broad. Grp., Inc.*, 2008 U.S. Dist. LEXIS 42265, at *3 (S.D. Ind. May 27, 2008) (emphasis in original).   The standards governing class certification under Rule 23 are not applicable to FLSA collective actions.   *Id.* at *5.

Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action.   The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members."   *Id.* (quoting *Carter*, 2003 U.S. Dist. LEXIS 23398, at *8).   "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute."   *Id.*

During the initial "notice stage," a plaintiff does not have to prove his entire case.   Rather, the plaintiff must make only a threshold showing that he is similarly situated to the employees on whose behalf he seeks to pursue claims. *Coan v. Nightingale Home Healthcare, Inc.,* 2005 U.S. Dist. LEXIS 15475, at *3 (S.D. Ind. June 29, 2005).   This threshold showing is "relatively modest." *Id*. "The modest factual showing required at the first step of the proceedings may be lenient, but it is not a mere formality."   *Allen v. Payday Loan Store of Ind., Inc*., 2013 U.S. Dist. LEXIS 169971, at *4 (N.D. Ind. Dec. 3, 2013) (citation and quotation marks omitted).   "[T]o meet their burden, Plaintiffs must provide evidence via an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy."   *Id*.   Although the first step of certification does not impose a high burden, "this does not mean that the 'modest factual showing' is a mere formality."   *Simmons*, 2014 U.S. Dist. LEXIS 102420 at *4 (quoting Campbell, 2010 U.S. Dist. LEXIS 87077 at 4).

> The first step serves as an important and functional step in the certification process because it would be a waste of the Court's and the litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.

*Id.*

### III.  DISCUSSION

The FLSA provides a procedural mechanism whereby employees may litigate a collective action on behalf of similarly situated employees.   29 U.S.C. § 216(b).   Among other things, the FLSA prohibits employers from working their employees more than forty hours in a work week without compensating the employee overtime wages at a rate of at least time and a half for hours worked in excess of forty hours.   29 U.S.C. §§ 207, 215(a)(2).   "An employee must be paid for all time spent in physical or mental exertion, whether burdensome or not, controlled and required by the employer, and pursued necessarily and primarily for the benefit of the employer or his business." *Sehie v. City of Aurora*, 432 F.3d 749, 751 (7th Cir. 2005) (citations and internal quotations omitted).   Time that an employee spends traveling from one worksite to another during a given workday is compensable under the FLSA.   Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.   29 C.F.R. § 785.38.   *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120 (10th Cir. 1999) (holding that shuttle time between split shifts was compensable and not a bona fide meal period because this travel was required).

Before conducting analysis on the issue of conditional certification, the Court will first determine whether Imel and his proposed class counsel are adequate representatives to bring this action.

### A.  Adequacy of Class Representative and Class Counsel

Although the requirements of Rule 23 generally do not apply to certification of an FLSA collective action, inadequacy of representation and proposed class counsel is nevertheless an equitable consideration at issue in determining whether to certify a putative class.  *See*

5

*Money Tree Mortg., Inc.,* 222 F.R.D. 676, 682 (D.Kan. 2004) ("[a]lthough FLSA § 16(b) does not expressly incorporate Rule 23(a)(4)'s adequacy-of-representation requirement, the adequacy of class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented.").

To be an adequate representative, as required for class certification, the named plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members. *Steimel v. Minott,* 2014 WL 1213390, at \*18 (S.D.Ind. Mar. 24, 2014).   Absent any conflict between the interests of the representative and other class members, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed. *Pietrzycki v. Heights Tower Service, Inc.* 197 F. Supp.3d 1007, 1019 (N.D. Ill. 2016).   To satisfy the adequacy requirement for class certification, proposed class counsel must be experienced and qualified and generally be able to conduct the litigation. *Id.*

Defendants argue that Imel and his proposed class counsel, Ronald Weldy ("Weldy") are not adequate representatives. They contend Imel is not an adequate representative because "Defendants have defenses unique to him." (Filing No. 31 at 8).   Relying on *McDonald v. Madison Twp. Bd. of Twp. Trustees*, No. 2:07-CV-0697, 2007 WL 2916397, at \*2 (S.D. Ohio Oct. 5, 2007), Defendants explain that a district court is "required to consider whether there are defenses unique to each of the allegedly similarly situated plaintiffs."   Defendant argue that Weldy is not adequate because in *Brown-Pfifer v. St. Vincent Health, Inc.*, No. 1:06-CV-0236-SEB-JMS, 2007 WL 2757264, at \*8 (S.D. Ind. Sept. 20, 2007), and *Gomez v. St. Vincent Health, Inc*., No. 08–cv153, 2009 WL 1853120, at \*3 (S.D. Ind. June 25, 2009), Weldy was found to be inadequate and

6

in 2013 was suspended from the practice of law for 180 days.   Defendants note as recently as July 1, 2015, the Seventh Circuit found plaintiff's counsel's representation of a class problematic.   *See Pierce v. Visteon Corp.*, No. 14-2542, at 9-10 (7th Cir. July 1, 2015).

Regarding the adequacy of Imel as class representative, Imel notes that while Defendants assert that they have defenses unique to Imel, they do not articulate what those defenses are.   Thus, Imel argues that Defendants have waived this argument by failing to put evidence to support it before the Court.   While Calhoun contends there is a recording and text messages of Imel stating that he wants his job back and he brought the lawsuit because he was angry because he was terminated, Defendants have not submitted any evidence of this alleged recording or text messages.

In making the determination as to whether other employees may be situated similarly to the plaintiff, the Court looks at a variety of factors, including whether there are defenses unique to each of the allegedly similarly-situated plaintiffs.   Defendants make the statement that they have defenses unique to Imel, however, they have not explained to the Court what those defenses might be or presented evidence to support this contention.   Without more, the Court has no basis to find Imel an inadequate class representative.   Moreover, even if Imel has stated that he wants his job back and he brought this lawsuit because he was angry, these statements do not negate Imel's claims that Defendants failed to pay Imel and other hourly workers overtime pay as required by the FLSA, or that Imel is unwilling to aggressively conduct the litigation.   Defendants have presented nothing to show that Imel is unable to protect the different, separate, and distinct interest of the proposed class members—fellow hourly co-workers.   Accordingly, the Court determines that Imel is an adequate representative.

Regarding the adequacy of class counsel, Weldy has submitted an affidavit in support of

his adequacy.   (Filing No. 37-1.)   Weldy is an attorney in good standing with the State of Indiana and the Southern District of Indiana, is a sole practitioner and has concentrated his practice in the area of employment law since 2003.   He affirms that to date, he has been appointed class counsel in 17 state and federal matters.   *Id.* ¶¶8-9.   This includes nine (9) state and federal matters prior to his 2013 suspension and eight (8) state and federal matters since the suspension.   *Id.*   Weldy notes that this Court has found him adequate on a motion for condition certification on two (2) occasions including one (1) time since the 2013 suspension.   *Id.*   Weldy currently has nine (9) class actions pending at various stages of litigation.   *Id.*   ¶11. This includes four (4) cases, including this case, where Weldy is seeking to be appointed Class Counsel.   *Id.* ¶ 10.   Weldy declares that the conduct at issue occurred over ten years ago, he has competently handled the instant matter, and is a much better lawyer due to his experience since these issues occurred.

Weldy has submitted a declaration explaining his past problems and demonstrating his litigation experience in labor/employment cases as well as class actions.   Since the issues described above, this Court has not observed any indication that Weldy has been less than diligent in his representative capacity.   Thus far in these proceedings, Weldy has submitted competent pleadings and met all deadlines.   The Court finds that Weldy can adequately represent the class, and if deficient performance is observed, this determination can be revisited.

**B.**   **Conditional Certification**

Imel asserts that he and his fellow hourly employees were/are entitled to be paid for all overtime hours worked over 40 hours in a workweek.   In support of his Motion, Imel provides a declaration affirming that Defendants violated the FLSA by illegally deducting time from its hourly employees' time worked as punishment if DC Construction does not like where the

employee is physically located when clocking in or out while using the program on the employee's cell phone to do so; by deducting a one hour lunch break regardless of whether a lunch break was taken or not; and by deducting payment as punishment for drivers for stopping while on the clock at a gas station or other location.   He asks the Court to conditionally certify a collective action for his FLSA claim because he can meet the lenient, relatively modest threshold showing that he is similarly situated to other hourly employees who were denied overtime wages by Defendants. Imel additionally asks the Court to allow him to provide notice to potential plaintiffs who similarly have worked or are working for DC Construction and who have not been paid for overtime work.

In response to the Motion, Defendants criticize Imel for relying solely on his own affidavit, and contend Imel's affidavit is insufficient to create a reasonable inference that other employees were subject to an allegedly unlawful company policy for two reasons.   First, Defendants assert the affidavit does not contain any allegation that would actually constitute an illegal practice by stating Defendants would change the time entries if they "did not like where myself and/or my fellow hourly co-workers clock in out."   (Filing No. 31 at 4.)   Defendants argue this action was not illegal because DC Construction changed time entries to reflect the proper location of said employees at the time they clocked in or out.   *Id*.   Second, Defendants argue the management directive of deducting an hour for lunch break regardless of whether a break is taken or not is not an automatic violation of the FLSA.   *Id*.

Defendants also argue Imel has not provided sufficient information to show the employees he alleges to represent were similarly situated because Imel has not provided the names of the other hourly employees and has not provided sufficient information to show the employees he alleges to represent were similarly situated.   Defendants note that some evidence is required to

9

demonstrate the putative class is similarly situated and was a victim of a common policy or plan that violates the FLSA.   In other words, a plaintiff must show "some factual nexus that connects [him] to other potential plaintiffs as victims of an unlawful practice."   *Lallathin v. Ro Inc*., Cause No. 1:09-cv-1293-WTL-DML,   2010 WL 2640271, at *2 (S.D. Ind. 2010).   Thus, Defendants argue that Imel's Motion should be denied for failure to meet the minimum factual threshold necessary.

In his Reply, Imel reiterates that DC Construction's policies of deducting time as a punishment for clocking in or out at a wrong location, deducting time for a one hour lunch regardless of whether lunch is taken, and deducting time as a punishment for making unscheduled stops are all policies which violate the FLSA.   They note that Defendants have not disputed that these practices exist.   In response to the argument that Imel's declaration alone is insufficient to support his claim, Imel provides a list of cases in this district to show that conditional certification is routinely granted in one and two named plaintiffs cases where only the named plaintiffs have filed affidavits -- *Powers v. Centennial Communications, Corp*., Case No. 1:08-cv-208 (N.D.Ind.); *Wiyakaska v. Ross Gage, Inc. et. al.,* Case No. 1:10-cv-1664 LJM-DKL; *Criswell v. Solaray Corp*., Case No. 1:11-cv-1612 MJD-JMS; and *Clugston v. Shamrock Cartage & Spotting Services*, Case No. 1:13-cv-1047 TWP-MJD.

The Court is persuaded by Imel's arguments that he has sufficiently shown members of the proposed class are similarly situated to Imel as the class representative.   In his affidavit, Imel states that he and his fellow hourly employees are subject to a common pay practice which he alleges violates the FLSA.   Because the first step—conditional certification—occurs early in a case, "the court accepts as true the plaintiff's allegations and does not reach the merits of plaintiff's

10

FLSA claims." *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (.N.D. Ill. 1998).

Having analyzed the pleadings and affidavits that have been submitted, the Court determines notice should be given to putative class members.   "Conditional certification . . . is an initial determination that simply allows for putative class members to be identified and notified of their opportunity to opt-in."   *See Hawkins v. Alorica, Inc*., 287 F.R.D. 431, 438-39 (S.D. Ind. 2012).   "To warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees [sic] job duties, pay structures, hours worked, and whether they were paid" what they were owed under the FLSA.   *Bradley v. Arc of Nw. Indiana, Inc*., No. 2:14CV204, 2015 WL 2189284, at *3 (N.D. Ind. May   11, 2015) (quoting *Hawkins v. Alorica, Inc*., 287 F.R.D. 431, 439 (S.D. Ind. 2012)).   Imel's declaration illustrates the similarities among himself and other hourly employees as he declares that his "Affidavit is made upon my personal knowledge of matters set forth herein."   (Filing No. 29-1 ¶ 1.)   He affirms that each act occurred to him and his fellow hourly co-workers.   Although Calhoun's declaration alleges that he reviewed Imel's daily sheets and determined that Imel was paid all that was owed, this allegation is one to be resolved during discovery in step two.

Defendants spend significant portions of its brief arguing the merits of Imel's claims against them.   For example, Defendants contend that Imel has admitted to Calhoun in text messages and in recordings that his claims are baseless and made in an effort to obtain re-employment with Defendants.   (Filing No. 31-1 ¶¶ 10-13.)   And Defendants contend the proposed class is overly broad and that 49 employee drivers have already resolved whatever FLSA claim they may have had, including overtime pay requests, following a Department of Labor audit with the cooperation

of the Department of Labor.   (Filing No. 31 at 7.)   Imel accurately notes that no declaration or other evidence is before the Court to support Defendants' claim that certain drivers have settled their claims with DC Construction through the Department of Labor.   Defendants are asking the Court to make factual determinations regarding the status of putative class members, ignoring the fact that discovery has not yet commenced in this action at this time and that Imel is subject to a lower standard at the conditional certification stage.   A determination of whether some hourly workers have already resolved their overtime disputes with DC Construction following an audit with the Department of Labor, and that Imel has stated he is only bringing this matter because he wants his job back, are matters to be determined when the parties undergo discovery.

Defendants' arguments go primarily to the merits of the claim, not to the similarity (or dissimilarity) of plaintiffs to other potential plaintiffs.   As another court in this District noted, "[a] plaintiff need not provide conclusive support for their similarly situated argument, but instead merely an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy."   *William v. Angie's List, Inc.*, 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016) (citation and quotation marks omitted).

Importantly, the declaration provided by Calhoun does not dispute that DC Construction deducts time for clocking in or out at a wrong location, deducts time for a one hour lunch regardless of whether lunch is taken, and deducts time as a punishment for making unscheduled stops.   Imel has presented a reasonable claim that by deducting payments, hourly employees may have been paid less than minimum wage for their work under DC Construction's compensation scheme.   It appears that Imel and the potential class plaintiffs are similarly situated employees who were subject to a common policy, plan, or practice.   The issue to be resolved later on the merits is

whether that common policy, plan, or practice violated the law.   Therefore, the Court concludes that Imel has met his burden of making a modest factual showing that other hourly employees are similarly situated potential plaintiffs to conditionally certify a collective action against.

## IV.  CONCLUSION

For the reasons set forth above, Imel's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In, (Filing No. 29), is **GRANTED** and the Court hereby conditionally certifies the FLSA claim as a collective action for the following class:

> All present and former hourly employees of DC Construction Services, Inc. who were employed on or after February 1, 2016 who had / have time deducted from their time worked as a punishment or for a lunch break without the employee noting that a lunch break was taken.

The parties shall proceed as follows:

1. Within **fourteen (14) days** of this Order, Defendants shall fully answer Plaintiff's Expedited Opt-In Discovery, and shall provide to Plaintiff a spreadsheet containing the names, last known home addresses (including zip codes), last known telephone numbers, last known email addresses, and employment dates (in Microsoft Office Excel format) of all present and former hourly employees of DC Construction Services, Inc. who were employed on or after February 1, 2016 who had / have time deducted from their time worked as a punishment or for a lunch break without the employee noting that a lunch break was taken.

2. Within **ten (10) days** of this Order, the parties shall submit to the Court proposed language for notification and consent forms to be issued via First-Class Mail and Email, apprising potential plaintiffs of their rights under the FLSA to opt in as parties to this litigation. In drafting the proposed notification language, the parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

3. The potential plaintiffs shall have **sixty (60) days** after the deadline for mailing of the Notice of Right to Join Lawsuit to return a Consent to Join form to opt-in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the form was not returned prior to the deadline.

The parties should contact the Magistrate Judge to schedule the next status conference.

**SO ORDERED.**

Date:   6/1/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com

Christopher Paul Jeter
MASSILLAMANY & JETER LLP
chris@mjcattorneys.com

Thomas W. Blessing
MASSILLAMANY & JETER LLP
tom@mjcattorneys.com

14